IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VALERIE O. SAUNDERS,          :
                             :
            Plaintiff,        :
                             :
    v.                       :        Civ. No. 14-329-RGA
                             :
E.I. DUPONT DE NEMOURS AND    :
COMPANY,                      :
                             :
            Defendant.        :

Valerie O. Saunders, Smyrna, Delaware.  Pro Se Plaintiff.

Kathleen Furey McDonough, Esquire, and Lauren E.M. Russell, Esquire.  Potter
Anderson & Corroon, LLP, Wilmington, Delaware.  Counsel for Defendant.

## MEMORANDUM OPINION

February 17, 2017
Wilmington, Delaware

*Richard G. Andrews*
**ANDREWS, U.S. District Judge:**

Plaintiff Valerie O. Saunders appears *pro se* and has been granted leave to proceed *in forma pauperis*. She commenced this employment discrimination action against Defendant E.I. DuPont de Nemours and Company on March 13, 2014. (D.I. 2). The amended complaint alleges employment discrimination pursuant 42 U.S.C. § 1981 and raises a supplemental state law claim. (D.I. 18). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367(a). Defendant moves for summary judgment. (D.I. 82). Plaintiff opposes.[1] Briefing has been completed. (D.I. 83, 84, 88, 91).

## I. LEGAL BACKGROUND

Saunders alleges employment discrimination by reason of race in the forms of a hostile work environment, termination, and failure to hire. The original complaint raised claims under several theories, including Title VII of the Civil Rights Act of 1964, 42 2000e, *et seq.*, and 42 U.S.C. §§ 1981, 1983, and 1988. It was dismissed upon Defendant's motion and Saunders was given leave to amend.[2] The amended complaint is the operative pleading and consists of Count I, race discrimination pursuant to 42 U.S.C. § 1981,[3] and Count V, breach of the implied covenant of good faith and fair dealing pursuant to Delaware law.

---

[1] A good portion of Saunders' opposition (D.I. 88) concerns her difficulty retaining an attorney, her displeasure with her former attorney, and her desire to again be represented by counsel, none of which are relevant to the issues raised by the motion for summary judgment.

[2] Saunders' Title VII claims, Counts I, II, and III, were dismissed as untimely. (D.I. 16 at 5-8).

[3] The relevant standards for race discrimination are the same under Title VII and 42 U.S.C. § 1981. *See Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 n.3 (3d Cir. 1999).

## II.    FACTUAL BACKGROUND

Saunders was hired by Taryn Albert, manager of operations and facilities, to begin work in July 2011 as a senior laboratory technician at DuPont's formulations group located at the Stine-Haskell Laboratory in Newark, Delaware. (D.I. 84 at A25, A495-99). Her duties included assisting in the production of chemical formulations that were to be administered to test systems. (*Id.* at A500-01). The position requires "attention to detail and precision." (*Id.* at A502).

Saunders worked in the formulation lab with Patti Bennett, a formulations chemist. (*Id.* at A175). Bennett's duties included training Saunders. (*Id.* at A177). When Saunders questioned Bennett during Bennett's deposition, Saunders acknowledged that Bennett was a "good trainer." (*Id.* at A339). Bennett testified that she trained Saunders exactly as she had trained other technicians who came to work in the lab. (*Id.* at A340). Accordingly to Bennett, specific tasks for the formulations lab should be mastered within three months at the outside, and some employees mastered the tasks in a much shorter time. (*Id.* at 342-43).

Bennett did not supervise Saunders. (*Id.* at A332). Both Saunders and Bennett were supervised by, and reported to, Albert. (*Id.* at A174-76, A332). Albert explained that Bennett was generally responsible for creating the formulation sheet, which is the "recipe" for any particular formula, and that Saunders was tasked to follow the formulation sheet instructions and "assemble the recipe." (*Id.* at A223-24). Saunders' position was to support Bennett. (*Id.* at A177). During the relevant time, only Saunders and Bennett worked in the formulations lab. (*Id.* at A175).

2

On September 21, 2011, DuPont's regulatory analytical group discovered that a formula of Saunders' was made with a dosage concentration lower than what should have been prepared. (*Id.* at A211-12). Saunders explained to Albert that she had made a simple math error and apologized for the mistake. (*Id.* at A213-14). When Bennett was on vacation, Saunders committed a second quality infraction on October 26, 2011. (*Id.* at A216, A309, A478-79). Bennett had left a list for Saunders for things she needed to do while Bennett was on vacation. (*Id.* at A308). Bennett does not recall if Saunders would have been specifically able to handle everything on the list, but she made sure that Saunders had help if she needed it. (*Id.* at A309). Animal resource group employees discovered that Saunders created a reduced-strength diet for the test rodents, instead of the full-strength diet called for by the formulation sheet. (*Id.* at A216-19, A478). Saunders met with Albert, told Albert that she had pulled the wrong formulation sheet for the study, and apologized. (*Id.* at A221-23).

After the second incident, to ensure that Bennett was properly training Saunders, Albert would stop in the formulation lab, observe, and have conversations with Bennett and Saunders "as to the progress." (*Id.* at A227). Bennett testified that Albert did not come into the lab very often. (*Id.* at A420). Bennett told Albert that Saunders seemed to have difficulty absorbing some of the training. (*Id.*) Albert met with Saunders and asked if she had concerns or if there was anything she could do to help her, and Saunders replied that "everything was fine." (*Id.* at A230).

Saunders committed a third error on December 1, 2011, when a third-party analytics laboratory discovered that a serial dilution she had prepared was 30% lower than the targeted concentration level. (*Id.* at A478-79, A231-35). During the quality

3

investigation, Saunders was questioned and stated that she "felt that it was a pipette error on her part." (Id. at A233-34).

Albert became concerned after learning of the third infraction because there appeared to be a pattern of a number of mistakes occurring in a short period of time. (Id. at A235). Albert consulted human resources generalist Judy Hrivnak and, rather than "a verbal," together they drafted a document for written corrective action to hand to Saunders. (Id. at A235-41.) The written corrective action was approved by human resources but, before Albert could give it to her, Saunders informed Albert that a fourth quality incident had occurred on December 8, 2011 when she incorrectly prepared a formulation. (Id. at A242, A246-47, A478-79). During her deposition, Bennett testified that the "quality infractions" made by Saunders "demonstrated a lack of basic understanding of the processes in the lab," they were "frequent," and they "should not have happened to anyone with a Bachelor's degree in chemistry and some background in laboratory work." (Id. at A422). Bennett further testified that, had "Saunders paid attention to the training, she would have known where" materials were located. (Id. at A423).

After December 1, but before December 8, 2011, Albert spoke to Bennett about Saunders' training. (Id. at A245). Bennett stated that she had made several offers to Saunders about additional training, that Saunders insisted she was comfortable, and that she understood the tasks that were presented to her. (Id. at A246). Albert testified that after the fourth infraction, the lab had lost confidence in Saunders' performance and formulations. and a decision was made among Hrivnak, director Mark Thompson, and Albert to turn the written corrective action into a notice of special action. (Id. at

4

A249-50). The group felt that the "lack of attention to detail was a predominant theme and that the lab had lost confidence in [Saunders]," so Saunders needed to be pulled out of the formulations lab. (*Id.* at A250). Bennett had no input in the notice of special action. (*Id.* at A297-98).

Saunders was given the notice of special action on December 15, 2011. (*Id.* at A478-479). The notice of special action served as a termination. (*Id.* at A258). It gave Saunders two months to find another job, within DuPont or outside of DuPont, and during that time she was allowed to prepare labels, do paperwork and other things in the lab, but she was not allowed to assemble a formulation. (*Id.* at A40, A258-59). Saunders' termination date was February 29, 2012. (*Id.* at A41).

Saunders applied for a number of jobs between December 15, 2011 and February 29, 2012, including positions as a senior lab technician for engineering coatings and an associate analytical chemist, but she was not selected for any of them.[4] (*Id.* at A40, A111-12, A122). Saunders testified that she was not hired for the positions based upon her race. (*Id.* at A20-24, A114, A122, A129-31). Saunders explained that one position was filled by a white male and that the majority of the group was composed of white men. (*Id.* at A115). Saunders did not know the qualifications of the persons hired. (*Id.*). She became aware that she was not hired for the analytical position by November 2011 and the senior lab technician position by early January 2012. (*Id.* at A114, A125). She testified that with these two positions, her performance

---

[4]Saunders testified that she applied for the associate analytical chemist position in 2010. (D.I. 84 at A124).

and how she worked were known; 'with that knowledge, race definitely entered into their perspective." (*Id.* at A131).

Saunders testified that she believed that DuPont used the "quality incidents to overinflate the detriment to the business or the problem of these incidents to terminate [her] because of race." (*Id.* at A57). She testified that her team was also to blame for the infractions. (*Id.* at A61). Saunders was unaware of any other DuPont employee who had committed four or more quality infractions. (*Id.* at A81). She testified that white employees Melissa Fullers, Bennett, "someone in Andy Logue's group," her replacement, and anonymous employees on a PowerPoint slide also committed quality incidents, but were not terminated, or were given less severe punishments. (*Id.* at A64-75, A484; *see also* D.I. 88 at 22-41).

Saunders asserts that she was subjected to a hostile work environment and that DuPont discriminated against her between 2011 and 2012 in her role as a senior laboratory technician in the formulations group. (*Id.* at A17, A42). Saunders testified that Bennett "has some negative energy around black people." (*Id.* at A27). Saunders clarified that she did not "want to say black people. Maybe it's just black me." (*Id.*). She testified that Bennett did not communicate well with her, chose not to put together training documents for her, and gave her menial tasks. (*Id.* at A27-28). Bennett told Saunders that she did not want to give her more than Saunders could handle, but Saunders believed that Bennett thought her incapable of handling the information because Saunders is African-American. (*Id.* at A32). Saunders acknowledged that the jobs Bennett asked her to do were not outside the expected job duties for a lab technician, but Saunders felt it was racist for Bennett to give her menial jobs that she

6

could do and not "the meat of what she needed to learn." (*Id.* at A32-33). Saunders testified that Bennett had a hostile attitude towards her that "may have manifested its way in lack of training." (*Id.* at A36). Saunders testified that Bennett was hostile towards other individuals, both of whom were white. (*Id.* at A37).

Saunders testified that her evidence of alleged mistreatment by Bennett on the basis of race consisted of a black voodoo doll that Bennett kept on her desk. (*Id.* at A27-29). Saunders never told Albert about the doll. (*Id.* at A31). Saunders was not sure, or did not know, what a voodoo doll was, but found it racially offensive because the doll was black and not white, yellow, or orange. (*Id.* at A47-49).

Saunders testified that Bennett never made any remarks about Saunders' race, never used offensive racial language towards Saunders, and never used offensive language towards others. (*Id.* at A42-43). Saunders referred to an incident prior to the time that she was employed as a senior lab technician when a co-worker made racially offensive comments during the 2008 presidential election. (*Id.* at A43-46). Saunders reported the comments, the co-worker was spoken to, and Saunders felt that matter was handled appropriately. (*Id.* at A43-46).

When asked about her claim for breach of the implied covenant of good faith and fair dealing, Saunders testified that DuPont misrepresents the educational requirements that are necessary or preferred for various positions. (*Id.* at A132). She stated that DuPont's corporate values policy that "all employees will be treated fairly," was a false promise because she was not treated fairly. (*Id.*). Saunders testified that DuPont did not falsify or manipulate any employment records, but it "overinflated incidents" involving her. (*Id.* at A133). Saunders is not claiming that DuPont deprived

7

her of any compensation. (*Id.*).

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Id.* Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

With respect to summary judgment in a discrimination case, the court's role is "to determine whether, upon reviewing all the facts and reasonable inferences to be drawn

8

therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

DuPont moves for summary judgment on the grounds that: (1) Saunders cannot establish a *prima facie* case of race discrimination or a hostile work environment; (2) the failure to hire claim is time-barred and Saunders has failed to establish a *prima facie* case of unlawful discrimination on the basis of failure to hire; and (3) Saunders failed to establish a *prima facie* case for breach of the implied covenant of good faith and fair dealing.

## IV.    DISCUSSION

### A.    Hostile Work Environment

DuPont contends that Saunders' claim fails to state a *prima facie* claim of a hostile work environment. Saunders responds that Bennett created a hostile training environment and stopped training her in August 2011.

To make a *prima facie* case of hostile work environment, a plaintiff must establish the following five elements: (1) "she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same race in [her] position; and (5) the existence of respondeat superior lliability." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996). Not all workplace conduct that may be described as harassment rises to the level of a hostile work environment. *Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18,

9

25 (3d Cir. 2006). Several factors inform that determination, such as the severity of the harassment, the frequency of the harassment, and the degree of abuse. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

"Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001). Hence, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 271; *see also Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (noting that the standard for judging hostility under Title VII must be sufficiently demanding so that the statute does not become "a general civility code"). Rather, the plaintiff must show that she was subjected to continuous and repeated acts of harassment. *See Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990).

Saunders claims she was subjected to a hostile work environment because Bennett: (1) had "negative energy" around Saunders because of her race; (2) did not communicate well with her; (3) gave her menial tasks; (4) did not put together training documents for her; and (4) had a black voodoo doll on her desk. While Saunders complained about the tasks Bennett assigned her, Saunders testified that the assigned tasks were not outside her expected job duties. While Saunders testified that Bennett had a hostile attitude towards her, she also testified that Bennett was hostile towards

10

white individuals. Saunders acknowledged that Bennett never made any remarks about Saunders' race, never used offensive racial language towards Saunders, and never used offensive language towards others.

While Saunders complains that Bennett had a voodoo doll on her desk which made her uncomfortable, she never reported it to her supervisor. *See Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 174-75 (3d Cir. 2014) (employee failed to prove hostile work environment when she did not complain to supervisors about any discrimination) Of note is that Saunders was aware of the steps to take when faced with issues she found offensive given her testimony that when she was involved in a conversation in 2008 that she found racially offensive, she complained, and was satisfied with the corrective action that was taken.

In addition, Saunders relies upon her subjective beliefs to support her position that she was subjected to a hostile work environment. Saunders believed that Bennett thought Saunders was incapable of handling information because of Saunders' race and she felt that Bennett had negative energy around Saunders based upon her race. Saunders' subjective beliefs, however, are insufficient to create a genuine issue of material fact. *See Fiorentini v. William Penn Sch. Dist.*, 2016 WL 7338428, at *4 (3d Cir. Dec. 16, 2016) (plaintiff's belief that plaintiff had been demoted insufficient to show that plaintiff had been demoted).

Further, the evidence of record does not support a claim that Bennett provided racially motivated inadequate training. At most the record reflects that Bennett was not the most effective communicator and had a generally hostile attitude but, in Saunders' own words, Bennett was "a good trainer." Construing the facts in the light most

11

favorable to Saunders, the non-moving party, and assuming that Bennett's conduct may have been inappropriate work behavior, it is not indicative of race discrimination. *See Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998) (Title VII is not a "general civility code."); *see also Barber v. CSX Distrib. Serv.*, 68 F.3d 694, 702 (3d Cir. 1995) (general complaint of unfair treatment does not translate into a charge of illegal discrimination).

Finally, none of the incidents were particularly severe.  I assume that a reasonable factfinder could find that a black voodoo doll is racially offensive. Nonetheless, there is no evidence of record to suggest that the voodoo doll was physically threatening or unreasonably interfered with Saunders' work performance. She made no complaints about the doll to her supervisor.

After viewing the record in the light most favorable to Saunders, and considering the totality of the circumstances, the Court concludes that no reasonable jury could find that the claimed harassment was sufficiently severe or pervasive so as to create a hostile working environment.  *See e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986); *Davis v. Solid Waste Services, Inc.*, 625 F. App'x 104, 106-07 (3d Cir. 2015). For the above reasons, the Court will grant DuPont's motion for summary judgment on the issue of a hostile work environment.

## B. Race Discrimination

With regard to the race discrimination claim, DuPont argues that summary judgment is appropriate on the grounds that Saunders has failed to set forth a *prima facie* case of race discrimination and, in the alternative, the claim fails because Saunders was terminated for legitimate non-discriminatory reasons.  Saunders argues

12

that similarly situated employees were treated more favorably and were not terminated when they committed quality infractions.

Absent direct evidence of discriminatory intent, the Court analyzes a § 1981 claim using the familiar burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] *See Jones v. School Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir.1999) (applying *McDonnell Douglas* framework to § 1981 claim). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of making a *prima facie* showing of discrimination. *See McDonnell Douglas*, 411 U.S. at 802.

To establish a *prima facie* case of race discrimination, Saunders must prove that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered some form of adverse employment action; and (4) this action occurred "under circumstances that give rise to an inference of unlawful discrimination such as might occur" when a similarly situated person not of the protected class is treated differently. *Jones*, 198 F.3d at 410. The elements of a *prima facie* case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If Saunders succeeds in establishing her *prima facie* case, the burden shifts to DuPont to proffer "legitimate non-discriminatory" reasons for its actions. *See Reeves*, 530 U.S. at 142. If the defendant meets its "relatively light burden by articulating a

---

[5]"Direct evidence" is evidence sufficient to allow the jury to find "that decisionmakers placed substantial negative reliance on [race] in reaching their decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring in the judgment).

13

legitimate reason for the unfavorable employment decision," the burden of production shifts back to the plaintiff to present evidence from which a reasonable factfinder could infer that the employer's proffered reasons are pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

To defeat summary judgment at the pretext stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. To survive summary judgment, it is not enough for a plaintiff to simply declare that the reasons proffered by the employer are pretextual. *See Fuentes*, 32 F.3d at 765. The plaintiff must point to evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Id.* (internal citation, alterations, emphasis, and quotation marks omitted).

Saunders has established the first three elements of a *prima facie* case. Turning to the third element, to make a comparison of Saunders' treatment to that of an employee outside her protected class for purposes of a § 1981 claim, she must show that she and the employees "are similarly situated in all relevant respects." *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009) (emphasis omitted). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *Houston*, 355 F. App'x at 654.

14

In a severance case, the relevant factors may include, but are not limited to,
whether the comparators "1) had the same job description, 2) were subject to the same
standards, 3) were subject to the same supervisor, and 4) had comparable experience,
education, and other qualifications." *Taylor-Bray v. Delaware Dep't of Servs. for
Children, Youth & their Families*, 627 F. App'x 79, 83 (3d Cir. 2015) (per curiam)
(quoting *Salas v. Wisconsin Dep't of Corrs.*, 493 F.3d 913, 923 (7th Cir. 2007)).
Saunders is not required to show that she is identical to the comparator in each relevant
factor, "but she must show substantial similarity." *Id.* Accordingly, in order to establish
an appropriate class of similarly situated comparators, Saunders must identify
employees who share characteristics that are relevant to the facts of this case.

In the instant case, the individuals to whom Saunders compares herself as
having been treated more favorably are not similarly situated. Saunders referred to
Melissa Fallers, Bennett, an individual in Andrew Logue's group, and Pam Campbell as
comparators. Of note is that Saunders could point to no individual who, like her, had
committed four or more infractions in such a short time-frame. In addition, the
individuals either worked in different areas, had different job duties, reported to different
supervisors, or held different job titles. Even Campbell, who, like Saunders, had
several incidents, is not a similarly situated comparator given that she was in a separate
department, with a different supervisor, and held a supervisory position far different
from Saunders' non-supervisory senior laboratory technician. In light of the foregoing,
the Court finds that Saunders has failed to meet her burden to establish a *prima facie*
case of race discrimination.

15

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Because Saunders failed to establish the elements of her *prima facie* case, the Court will grant DuPont's motion for summary judgment on the race discrimination claim.

In the alternative, even had Saunders established a *prima facie* case of race discrimination, and even when construing the evidence in the light most favorable to Saunders, she has provided no evidence from which a fact-finder could either disbelieve DuPont's articulated reasons, or believe that discriminatory reasons were more likely than not the cause of the employment actions. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence--more than a scintilla but less than a preponderance--which supports each element of her claim to defeat a properly presented motion for summary judgment). Saunders committed four quality incidents within a five month span and the lab had lost confidence in her performance and formulations. Nothing before the Court contradicts DuPont's proffered reasons for the actions it took. Nor are its proffered reasons for its actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003). Finally, undermining any inference of unlawful discrimination is the fact that Albert, the person who initially hired Saunders, was also the person responsible for terminating her employment just a few months later. *See, e.g., Vernon v. A & L Motors*, 381 F. App'x 164, 167 (3d Cir. 2010)

16

As there is no genuine dispute on the dispositive legal issue of whether DuPont had discriminatory motives, the Court will grant DuPont's motion for summary judgment as to the issue of employment discrimination by reason of race.

## C. Failure to Hire

DuPont contends that Saunders' failure to hire claims are time-barred and, therefore, summary judgment is appropriate. Saunders did not address the issue in her opposition and her failure to do so "constitutes abandonment" of the claim. *See Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008).

Regardless, even had Saunders pursued the claims, summary judgment for DuPont is appropriate. Saunders referenced two positions for which she applied, and for both of which she contends that she was not hired based upon her race. Saunders became aware that she was not hired for one position in November 2011, and she became aware that she was not hired for the other position in early January 2012. Saunders commenced this lawsuit on March 13, 2014.

The failure to hire claims are raised pursuant to 42 U.S.C. § 1981. The original version of § 1981 prohibits discrimination in the "making and enforcing" of contracts, and its post-1990 amendment prohibits discrimination that occurs after the formation of the contract at issue. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372-73 (2004); *see also Chugh v. Western Inventory Services, Inc.*, 333 F. Supp. 2d 285, 294-95 (D.N.J. 2004). Claims brought pursuant to the original version of § 1981 are subject to the applicable state statute of limitations for the underlying injury; while claims brought pursuant to the post-1990 amendments to § 1981 are subject to a four-year statute of limitations. *See Jones*, 541 U.S. at 380-85.

17

The failure to hire claims allege a refusal to enter into a contract with Saunders for discriminatory reasons and, therefore, fall squarely within the pre-1990 amendment version of § 1981. *See George v. American Baptist Churches USA*, 2008 WL 2265281, at *4 (E.D. Pa. May 30, 2008). Therefore, the claims are subject to the holding in *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985), and its application of Delaware's two-year statute of limitations for personal injury actions, 10 Del. C. § 8119. *See Cuffy v. Getty Refining & Mktg. Co.*, 648 F. Supp. 802, 807 (D. Del. 1986).

The latest date that Saunders was notified she had not been hired was early January 2012, yet she did not filed her complaint until March 13, 2014, some two months after the expiration of the limitations period. The failure to hire claims are time-barred, and therefore, the Court will grant DuPont's motion for summary judgment on the failure to hire claims.

### D.    Disparate Impact

In Saunders's opposition to the motion for summary judgment she arguably raises for the first time a disparate impact claim, stating that she entered a workforce that included only two other African-American employees besides herself. (D.I. 88 at 2). The Court does not consider this claim given that it is raised for the first time in Saunders' responsive brief. *See generally Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (plaintiff may not amend complaint through arguments in brief in opposition to a motion for summary judgment).

### E.    Breach of Implied Covenant of Good Faith and Fair Dealing

DuPont moves for summary judgment on the grounds that Saunders failed to establish a *prima facie* case for breach of the implied covenant of good faith and fair

18

dealing. Saunders opposes the motion arguing that "each employee should be treated the same and not just the white employees should be given a chance to improve one's performance." (D.I. 88 at 3).

Delaware imposes a "heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite." *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 440 (Del. 1996). However, every employment contract, including an at-will contract, contains an implied covenant of good faith and fair dealing. *See Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992). The Delaware Supreme Court has identified four situations where an employee could bring a claim based on the implied covenant of good faith and fair dealing: (1) where termination violated public policy; (2) where the employer misrepresented an important fact and the employee relied on the misrepresentation either to accept a new position or remain in the current one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employer's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for termination. *Pressman*, 679 A.2d at 441-44. The categories are narrowly defined and exclusive. *Id.*

Under Delaware law, 19 Del. C. § 710 *et seq.*, which prohibits discrimination in employment practices, is the "sole remedy" for an aggrieved employee "to the exclusion of all other remedies." 19 Del. C. § 712(b) (2005); *see E.E.O.C. v. Avecia, Inc.*, 151 F. App'x 162, 165 (3d Cir. 2005) (per curiam). Saunders' main position is that she was not given the same opportunities as white employees. That is a discrimination claim, and, thus, it is precluded. In addition, although Saunders testified that DuPont

19

misrepresented various facts regarding the skill set required for the senior lab technician, there is no evidence of record that the alleged misrepresentation caused her to accept the position. Finally, Saunders testified that she is not claiming that DuPont deprived her of compensation or that it falsified employment records.

The evidence of record does not support Saunders' breach of implied covenant of good faith and fair dealing claim and no reasonable jury could find in her favor. Based upon the foregoing, the Court will grant DuPont's motion for summary judgment as a matter of law as to amended Count V.

## V.    CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment. (D.I. 82). A separate Order consistent with this Memorandum Opinion will be issued.